*1102
 
 PER CURIAM.
 

 We have for review a referee’s report recommending that Jeffrey Marc Herman be found guilty of professional misconduct and suspended from the practice of law for ninety days followed by a period of probation for two years, publicly reprimanded, and taxed with costs. The terms of the probation period recommended by the referee included the requirement that Herman perform two hundred hours of pro bono legal services at a rate of one hundred hours per year. We have jurisdiction.
 
 See
 
 art. V, § 15, Fla. Const.
 

 For the reasons expressed below, we approve the referee’s findings of fact and recommendations as to guilt, but disapprove the recommendations as to the sanctions and suspend Jeffrey Marc Herman for eighteen months and thereafter until reinstated by this Court and tax him with costs.
 

 BACKGROUND
 

 The Florida Bar filed a complaint alleging Jeffrey Marc Herman violated the Rules Regulating the Florida Bar. In due course, a referee was appointed, proceedings were held, and the referee filed a report with the Court. The Florida Bar petitioned for review of the recommended sanctions. Herman filed a cross-petition for review of the recommendations of guilt and recommendations of sanctions.
 

 The facts, as found by the referee, are as follows.
 
 [1]
 
 In November 1996, Herman, a partner in the firm of Herman & Grub-man, P.A. (the Firm), represented Aero Controls, which was in the business of selling and repairing component aircraft parts, and Triple J Leasing, an aircraft leasing business. John Titus owned both companies. Titus, Aero Controls, and Tripie J Leasing were all based in Seattle, Washington.
 

 Herman represented Aero Controls in a contract dispute and litigation over the purchase of a DC-10 aircraft from Air Star International. Aero Controls initially planned to dismantle the plane and sell the DC-10’s parts, but later decided to lease the aircraft through Triple J Leasing. The Firm also represented Triple J Leasing in negotiating and drafting the lease of a Boeing 737 aircraft to Air Kazakhstan. Herman was significantly involved in both cases.
 

 Thomas Bristow, Aero Controls’ top salesman, assisted Herman and the Firm in both matters. Consequently, Bristow spent a considerable amount of time in South Florida between November 1996 and February 1998 and developed a relationship with Herman and several other members of the Firm. Around the time of the trial in the Aero Controls case, February 20, 1998, Bristow told Herman’s legal secretary that he wanted to move back to Florida.
 

 Several years earlier, when Herman had represented various other aviation clients, he met Jack Ogilby and John Sicilian, who had extensive backgrounds in the aircraft business. On February 26, 1998, after the Aero Controls trial, Herman and Ogilby began discussing the possibility of establishing an aircraft leasing company.
 

 The Triple J lease negotiations, which involved Herman, ended in March 1998. In May 1998, Herman, Ogilby, Bristow, and a few other potential investors met to discuss the proposed creation of an aircraft leasing company. The day after the meeting, Herman prepared a document that identified the proposed company’s stated purpose as the “Purchase, Sale and Lease
 
 *1103
 
 of aircraft engines and spare parts.” Herman, Ogilby, and a few of the others signed the document. Bristow did not. On June 25, 1998, Herman incorporated Nation Aviation, with its principal business address being Herman’s law office address. Herman was its president, sole director, and registered agent. Nation Aviation began operations in the summer of 1998. Ogilby was in charge of the company’s “day-to-day” operation.
 

 Shortly after the Firm closed its file on a lease negotiation for Triple J in August 1998, Bristow called Herman, told him he was no longer employed by Aero Controls, and expressed an interest in working for Nation Aviation. (In fact, Bristow did not submit a letter of resignation to Aero Controls until October 8, 1998.) Herman, who still represented Aero Controls, entertained Bristow’s interest in working for Nation Aviation. Bristow and Ogilby negotiated an employment agreement, which Bristow signed on September 17, 1998. In December 1998, Ogilby had a falling out with Bristow and asked for the return of his investment. Other investors did also. By January 1999, Herman was the sole monetary investor in Nation Aviation. At that point, he had to choose between closing Nation Aviation and losing his investment or allowing Bristow to run the company exclusively as a seller and lessor of aircraft parts. Herman chose the latter, putting his company (which was now under the direction of his client’s former top salesman) in direct competition with his client, Aero Controls.
 
 [2]
 
 The referee concluded that Herman, who was still representing Aero Controls, should have called Titus at that point to disclose the conflict and request a waiver, but did not, because of monetary concerns. His failure to disclose was dishonest and deceitful.
 

 Nation Aviation obtained a sales tax license on January 14, 1999. It needed the license in order to sell or lease aircraft parts. The company began leasing warehouse space in February. Bristow sold parts to twenty-three customers who had been customers of Aero Controls during Bristow’s employment there. Through Bristow, Nation Aviation generated gross revenue in 1999 of over $880,000 from the sale of parts. The Firm represented Nation Aviation while it was still counsel for Aero Controls. Aero Controls never consented to the conflict.
 

 Titus learned that Herman owned Nation Aviation and was Bristow’s new employer in March 2000. He was shocked and felt betrayed by Herman’s actions. Aero Controls sued Herman for breach of fiduciary duty and other causes of action in the Circuit Court for the Seventeenth Judicial Circuit in
 
 Aero Controls, Inc. v. Herman & Grubman, P.A.,
 
 Case No. 00-12376 CACE 25 (the underlying case). Aero Controls prevailed on the breach of fiduciary duty claim. The parties entered into an out-of-court settlement in August 2005. Titus filed a Bar complaint against Herman in February 2006.
 

 The referee found the Bar proved the conflict of interest violations by clear and convincing evidence. Based upon the factual findings, the referee recommended that Herman be found guilty of violating Rules Regulating the Florida Bar 4-1.7(a) (prohibiting representation of a client if the representation will be directly adverse to the interests of another client, unless each client consents after consultation); 4-1.8(a) (prohibiting business transactions with a client or knowingly acquiring an ownership, possessory, security, or other pecuniary interest adverse to a client); 4-8.4(a) (prohibiting violations or attempts to
 
 *1104
 
 violate the Rules of Professional Conduct); and 4-8.4(c) (prohibiting engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
 
 [3]
 

 The referee found four aggravating factors and one mitigating factor. The aggravating factors were a dishonest or selfish motive; substantial experience in the practice of law; a refusal to acknowledge the wrongful nature of the conduct; and actual harm to the client. The sole mitigating factor was the absence of a prior disciplinary record.
 

 The Florida Bar petitioned for review of the recommended sanctions. Herman filed a cross-petition for review of the recommendations of guilt and recommendations of sanctions.
 

 ANALYSIS
 

 We address first the recommendations of guilt. The factual findings must be sufficient under the applicable rules to support the recommendations as to guilt.
 
 See Fla. Bar v. Shoureas,
 
 913 So.2d 554, 557-58 (Fla.2005). The referee in this case made numerous, detailed factual findings concerning Herman’s conduct from the time he met Bristow through the time of Titus’s lawsuit and beyond. The facts are not disputed. Rather, Herman maintains that the facts do not support the recommendations of guilt as to any of the rules at issue — 4—1.7(a), 4-1.8(a), 4-8.4(a), and 4-8.4(c). We address each in turn.
 

 Rule 4-1.7(a)
 

 Rule 4-1.7(a), in 1999, provided:
 

 (a) Representing Adverse Interests. A lawyer shall not represent a client if the representation of that client will be
 
 directly adverse to the interests of another client,
 
 unless:
 

 (1) the lawyer reasonably believes the representation will not adversely affect the lawyer’s responsibilities to
 
 and relationship with the other client;
 
 and
 

 (2)
 
 each client consents after consultation.
 

 (Emphasis added.)
 

 There is nothing in the language of the rule that restricts its application to directly adverse interests in the context of litigation between the two clients involved, as posited by Herman. Indeed, if the first part of the rule were interpreted this narrowly, there would be no need for the exceptions identified in parts (1) and (2). No lawyer could reasonably believe that representing both sides in litigation would not adversely affect either client or his relationship with them, and neither client would consent.
 

 Further, the lawyer must reasonably believe two things for the dual representation to possibly be ethical: (1) that his representation of both will not adversely affect his legal responsibilities toward the first client; and (2) that his representation of both will not adversely affect his relationship with the first client. The fact that Titus became very angry and sued for breach of fiduciary duty when he learned that Herman owned Nation Aviation demonstrates the implausibility of Herman reasonably believing that his economic ties to and representation of Nation Aviation would not adversely affect his relationship with Aero Controls. In fact, it seems likely that he deliberately decided not to call Titus to request a waiver because he knew it would destroy his relationship with him.
 

 Here, Herman represented Aero Controls at the same time he represented Nation Aviation, his own company. Both
 
 *1105
 
 companies performed the same services and functions and had the same pools of potential customers and potential suppliers. Litigation, contract disputes, and deal negotiations with one pool or the other would have been the most foreseeable legal activities on behalf of either client. In fact, Herman represented Aero Controls in 1996 in connection with a contract dispute with one of its suppliers for the purchase of a DC-10 aircraft that Aero Controls planned to dismantle and sell in pieces. Aero Controls ultimately prevailed. Assuming Nation Aviation had been in the parts business at that time, it would have been in a better position to buy the DC-10 for its own use if the contract dispute between Aero Controls and its supplier had gone the other way. In the “overpopulated” aircraft parts business, the loss of a contract or the failure of a negotiation for one client would have created additional opportunities for the other. The inherent, direct conflict was exacerbated by the fact that Herman owned one of the companies; his loyalties were not only divided, but unequal. Accordingly, we approve the recommendation of guilt as to rule 4-1.7(a).
 

 Rule 4-1.8(a)
 

 Rule 4-1.8(a), in 1999, provided:
 

 (a) Business Transactions With
 
 or Acquiring Interest Adverse to Client.
 
 A lawyer shall not enter into a business transaction with a client
 
 or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client,
 
 except a lien granted by law to secure a lawyer’s fee or expenses, unless:
 

 (1)the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and
 
 are fully disclosed and transmitted in writing to the client
 
 in a manner that can be reasonably understood by the client;
 

 (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
 

 (3) the
 
 client consents in writing
 
 thereto.
 

 (Emphasis added.) The rule prohibits two broad categories of conduct: (1) entering into a business transaction with a client; or (2) acquiring an ownership, possessory, security, or other pecuniary interest adverse to a client. Only the first category involves transactions directly with the client. Herman’s conduct falls in the second category. Herman’s argument that the rule prohibits only business transactions directly with the client would make the second clearly identified category useless surplusage.
 

 Herman’s decision to invest in and form Nation Aviation, which was originally going to engage in the same business as Triple J Leasing, was problematic. Nevertheless, the referee concluded that this was not enough to violate the rule. However, when Herman changed the nature of Nation Aviation’s business (bringing Nation Aviation into direct competition with Aero Controls), Herman had an ethical obligation to disclose his activities to Titus; his failure to disclose and obtain Titus’s consent violated the rule. We therefore approve the recommendation of guilt as to rule 4-1.8.
 

 Rules 4-8.4(a) and 4-8.4(c)
 

 Rules 4-8.4(a) and (c), in 1999, provided:
 

 A lawyer shall not:
 

 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 

 [[Image here]]
 

 (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ....
 

 
 *1106
 
 In light of our approval of the recommendations of guilt as to rules 4-1.7 and 4-1.8, we also approve the recommendation of guilt as to rule 4-8.4(a). The recommendation of guilt as to rule 4-8.4(c) is based on the findings that Herman’s failure to call Titus and inform him of his activities was dishonest and deceitful. Herman did not challenge these factual findings.
 

 Aggravation and Mitigation
 

 Herman takes issue with the aggravating factors found by the referee and also argues that additional mitigating factors should have been found. Like other factual findings, findings of mitigation and aggravation carry a presumption of correctness that will be upheld unless clearly erroneous or without support in the record.
 
 See Fla. Bar v. Arda,
 
 848 So.2d 296 (Fla.2003). A referee’s determination that an aggravating factor or mitigating factor does not apply is due the same deference.
 
 See Fla. Bar v. Arcia,
 
 784 So.2d 414, 415-16 (Fla.2001);
 
 Fla. Bar v. Bustamante,
 
 662 So.2d 687, 687 (Fla.1995);
 
 Fla. Bar v. Hecker,
 
 475 So.2d 1240, 1242 (Fla.1985).
 

 The fact that there is some evidence in the record to support a finding that a mitigating factor might apply does not mean that the referee should have necessarily found it applicable. In most cases there will be some evidence to support one finding and some evidence to support an opposite finding. The referee’s responsibility is to weigh all of the evidence and decide which factors have been proven by clear and convincing evidence. In this case, Herman has failed to demonstrate that the aggravating factors found, or the mitigating factors not found, were “without support in the record.”
 

 Herman argues that the referee should have found the mitigating factor of character and reputation. The referee found that Herman knew Bristow had been Aero Controls’ top salesman, that Nation Aviation would be in direct competition with Aero Controls once it began selling and leasing aircraft parts, that Bristow would have day-to-day control over the company, and that he needed to disclose his activities to Titus but did not. This is sufficient to support the referee’s decision that the factor of character does not apply.
 

 Herman states that the full-and-free-disclosure mitigator should have been applied, but he does not provide any facts to demonstrate exceptional disclosure or cooperation on his part to support his argument. For example, in
 
 Florida Bar v. Pincket,
 
 398 So.2d 802 (Fla.1981), a case involving trust account improprieties, the attorney voluntarily paid full restitution with interest to one of his clients; self-reported an additional violation of the trust account provisions to the Bar in an effort to prevent any further harm to the public, the courts, or the Bar; pled guilty to the rule violations with which he was charged; voluntarily advised the Bar of his trust account deficiencies; and waived grievance and referee proceedings. The only issue before the Court in the case was whether the discipline recommended by the Board of Governors (disbarment) was too severe in light of the attorney’s level of cooperation in the Bar discipline proceedings. This Court held the mitigation of the attorney’s cooperation warranted a reduction of the presumptive disbarment to a two-year suspension.
 
 See also Fla. Bar v. Hochman,
 
 815 So.2d 624 (Fla.2002) (imposing three-year suspension nunc pro tunc to date of his earlier suspension in a felony suspension case where the attorney, after suffering from drug addiction and alcoholism for five years, admitted himself into a facility for treatment and, upon completing treatment, voluntarily informed the Bar and his clients that he had misappropriated funds, entered into a guilty plea
 
 *1107
 
 and consent judgment with the Bar under which he was suspended for three years and required to continue rehabilitation and make restitution, and complied with all of the terms of his consent judgment and continued to be very proactive in his recovery efforts);
 
 Fla. Bar v. Corces,
 
 639 So.2d 604 (Fla.1994) (imposing a two-year suspension on an attorney for trust account violations where the attorney had made full restitution before the Bar began its investigation);
 
 Fla. Bar v. McShirley,
 
 573 So.2d 807 (Fla.1991) (imposing a three-year suspension on an attorney who misappropriated client funds where the attorney had replaced the converted funds before the Bar began the audit of his trust account).
 

 The mitigating factor of cooperation in the Bar discipline process contemplates something above and beyond the normal cooperation expected of every member of the Bar. Unlike the attorneys in the cases cited above, Herman admitted the facts the Bar could have easily established with or without his cooperation,
 
 i.e.,
 
 that he owned Nation Aviation, that Nation Aviation switched to selling and leasing aircraft parts in January 1999, and so forth. Accordingly, Herman has not demonstrated that the referee’s decision with regard to this mitigating factor was clearly erroneous.
 

 Herman’s assertion that harm to the client can only be considered an aggravating factor in drug cases is simply incorrect. Standard 12.1(b) lists “actual harm to clients or third parties” as a possible aggravating factor. This standard is not restricted to drug cases. We approve the referee’s findings as to aggravating and mitigating factors.
 

 Appropriate Sanction
 

 Finally, we address the appropriate sanction for Herman’s misconduct. The referee recommends a ninety-day suspension followed by probation for two years. The Bar argues that a two-year suspension is the appropriate sanction. Herman maintains that his conduct warrants, at most, a public reprimand. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is this Court’s responsibility to order the appropriate sanction.
 
 See Fla. Bar v. Anderson,
 
 538 So.2d 852, 854 (Fla.1989); see
 
 also
 
 art. V, 15, Fla. Const. However, generally speaking we will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.
 
 See Fla. Bar v. Temmer,
 
 753 So.2d 555, 558 (Fla.1999).
 

 As pointed out by the Bar, standards 4.32 and 7.2 support imposition of a suspension in this case. Standard 4.32 provides that a suspension is appropriate “when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.” Herman knew there was a conflict of interest and failed to disclose the conflict of interest to Titus; and Titus and Aero Controls were injured by Herman’s conduct. Standard 7.2 provides that a suspension is appropriate “when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.” The same facts recited above also make this standard applicable.
 

 The referee cites no applicable cases to support his recommendations of a ninety-day suspension followed by two years of probation. The Bar argues that a two-year suspension is appropriate, citing to
 
 Florida Bar v. Rodriguez,
 
 959 So.2d 150 (Fla.2007). The lawyer in
 
 Rodriguez
 
 represented several clients in a class-action
 
 *1108
 
 lawsuit against a chemical company for crop damages allegedly caused by a chemical manufactured by the company. During discovery in one of the cases, the firm discovered evidence that the company had conducted tests of the chemical in Costa Rica and discovered that it caused crop damage there. The company began settlement negotiations, but tied its willingness to settle to a side agreement with the law firm not to represent any other clients in suits against it. The company paid the firm over $6 million under the agreement. Rodriguez received $1.5 million as his share. This Court imposed a two-year suspension and disgorgement of the money to The Florida Bar’s Client Security Fund.
 

 The facts in
 
 Rodriguez
 
 are more egregious than those in this case. Entering into a secret agreement with the opposing party while still involved in litigation against them, especially when the agreement is part and parcel of settlement negotiations, is a much more blatant conflict of interest than that involved here. Thus,
 
 Rodriguez
 
 supports the conclusion that something less than a two-year suspension would be appropriate in this case.
 

 The case of
 
 Florida Bar v. Bennett,
 
 276 So.2d 481 (Fla.1973), establishes the lower limits. In
 
 Bennett,
 
 the attorney was sued in circuit court by four of his co-investors in a business deal for “fraudulent misrepresentation and breach of fiduciary duties.” The attorney told his partners that the price of property purchased was $146,000 when it was $140,000 and that part of the shopping center was not for sale when it was. He also failed to pay the taxes on the property after his partners gave him the money to do so and fraudulently acquired ownership of one of the store premises in his own right. They recovered a final judgment for $71,333. Although he did not have an attorney/client relationship with his co-investors, he was a trustee for the group, which gave rise to a fiduciary duty. This Court suspended the attorney for one year for his conduct, which violated what is now rule 4-8.4(c).
 
 [4]
 

 As here, the attorney in
 
 Bennett
 
 argued that he was acting as a private investor and not an attorney in the shopping center purchase, so there was no conflict of interest. The Court disagreed, stating “that attorneys can seldom cast off completely the mantle they enjoy in the profession and simply act with simple business acumen and not be held responsible under the high standards of our profession” and that even in their business dealings they must “avoid tarnishing the professional image or damaging the public which may rely upon their professional standing.”
 
 Id.
 
 at 482.
 

 The conduct in
 
 Bennett
 
 is less egregious than that involved here. None of Bennett’s co-investors were clients. Additionally,
 
 Bennett
 
 was decided in 1973 and this Court “has moved towards stronger sanctions for attorney misconduct” in recent years.
 
 See Fla. Bar v. Rotstein,
 
 835 So.2d 241, 246 (Fla.2003). Thus, one year is the least amount of time that would be appropriate in this case. As Herman’s conduct falls somewhere between that in
 
 Rodriguez
 
 and that in
 
 Bennett,
 
 we disapprove the referee’s recommended sanctions, suspend Herman for eighteen months (without probation), and order him to pay the Bar’s costs. In light of the longer suspension period, we disapprove the recommendation that Herman also be publicly reprimanded for his conduct.
 

 
 *1109
 
 As for the recommendation that Herman be required to perform 200 hours of pro bono legal services during a two-year probation, this is not one of the types of disciplinary sanctions identified in Rule Regulating the Florida Bar 3-5.1. The rule allows for probation and certain kinds of additional training, but not for the provision of pro bono legal services.
 
 [5]
 
 As a practical matter, probation is usually imposed when the respondent suffers from some kind of drug or alcohol addiction or mental illness, such that ongoing monitoring of the respondent’s condition is desirable.
 

 CONCLUSION
 

 Jeffrey Marc Herman is hereby suspended from the practice of law in Florida for eighteen months and thereafter until he proves rehabilitation. The suspension will be effective, nunc pro tunc, February 7, 2009, the effective date of the discipline that this Court imposed in its January 8, 2009, order.
 
 Fla. Bar v. Herman,
 
 No. SC07-S63, 1 So.3d 173, 2009 WL 55936 (Fla. Jan. 8, 2009) (unpublished order). As Herman is currently suspended, he does not need thirty days to close out his practice and protect the interests of existing clients. Herman shall accept no new business until he is reinstated to the practice of law in Florida.
 

 Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Jeffrey Marc Herman in the amount of $11,741.40, for which sum let execution issue.
 

 It is so ordered.
 

 QUINCE, C.J., and WELLS, PARIENTE, LEWIS, and POLSTON, JJ., concur.
 

 CANADY, J., concurs in result only.
 

 LABARGA, J., did not participate.
 

 [1]
 

 . As a preliminary matter, neither party challenges the referee’s findings of fact. Accordingly, we approve those findings without further discussion.
 

 [2]
 

 . Herman and the Firm continued to represent Aero Controls and its affiliated companies in various legal matters until August 1999.
 

 [3]
 

 . The versions of these rules in effect in January 1999, the point at which Nation Aviation began to sell and lease aircraft parts, are given.
 
 See
 
 R. Regulating Fla. Bar 4-1.7(a), 4-1.8(a) (1992); 4-8.4(a), (c) (1998).
 

 [4]
 

 . At the time of the misconduct in
 
 Bennett,
 
 article XI, paragraph 2, of the Integration Rule of the Florida Bar (1955) provided in pertinent part: “The commission by a lawyer of any act, contrary to honesty, justice or good morals, whether the act is committed in the course of his relations as an attorney or otherwise, and whether or not the act is a felony or misdemeanor, constitutes a cause for discipline.”
 

 [5]
 

 . Although not addressed in the opinions, the referee in the
 
 Rodriguez
 
 and
 
 Florida Bar v. St. Louis,
 
 967 So.2d 108 (Fla.2007), cases recommended the sanction of requiring a certain number of pro bono hours in both cases.
 
 See St. Louis,
 
 967 So.2d at 118 (disbarment);
 
 Rodriguez,
 
 959 So.2d at 158 (two-year suspension). The Court disapproved the recommendations.