PER CURIAM.
We have for review a referee’s recommendations in five disciplinary cases regarding alleged ethical breaches by respondent Hans Charles Feige. We have jurisdiction. See art. V, § 15, Fla. Const.
In each of the five cases, the referee found Feige guilty of numerous violations of the Rules Regulating the Florida Bar (Rules) and recommended a one-year suspension. We approve the referee’s factual findings with regard to guilt on all rule violations. However, we do not approve the referee’s recommended discipline because we find that a one-year suspension is too lenient. Instead, we impose a three-year period of suspension in each case. As recommended in the report, these suspensions are to run concurrently. We approve the referee’s recommendation that Feige be required to prove, medical fitness as a condition to reinstatement. We also approve the referee’s recommendation that Feige be placed on probation for two years. Finally, we approve the referee’s recommendation that Feige pay the Bar’s costs but disapprove the recommendation that Feige pay restitution to his clients.
BACKGROUND
After a- series of hearings, the referee found that Feige committed numerous ethical violations while representing seven clients in widely varying matters that in- *607 eluded divorce proceedings, child custody proceedings, a negligence lawsuit, and a municipal code matter. In particular, the referee found the following: Feige provided unreasonable and incompetent advice; failed to seek adequate remedies for clients; failed to conduct discovery and attend hearings; promised clients, opposing counsel, and trial courts that he would take certain actions that he never accomplished or failed to accomplish in a timely manner; failed to maintain adequate communication with clients despite numerous attempts by clients to contact him; failed to inform clients about the service of petitions, the filing of motions, and the setting of hearings; failed to clarify the scope and price of his services; failed to provide billing statements to clients after they were requested; accepted gold coins from his client as collateral for the fee without advising the client to seek advice from other counsel and without recording the terms of the transaction, including the number and value of the coins; failed to protect and account for property given to him in trust by clients; charged an excessive fee; failed to cooperate and be honest with opposing counsel; and failed to respond to the Bar’s inquiries as required by the rules.
Based on this conduct, the referee found Feige guilty of violating the following rules: rule 4-1.1 (Competence); rule 4-1.2(a) (Lawyer to Abide by Client’s Decisions); rule 4-1.3 (Diligence); rule 4-1.4(a) (Informing Client of Status of Representation); rule 4-1.4(b) (Duty to Explain Matters to Client); rule 4-1.5(a) (Illegal, Prohibited, or Clearly Excessive Fees and Costs); rule 4-1.5(e)- (Duty to Communicate Basis or- Rate of Fee or Costs .to Client); rule 4-1.8(a) (Business Transactions With or Acquiring Interest Adverse to Client); rule 4-1.15 (Compliance with Trust Accounting Rules); rule 4-3.2 (Expediting Litigation); rule 4-8.4(c) (dishonesty); rule 4-8.4(d) (conduct prejudicial to administration of justice); rule 4-8.4(g)(l) (failure to respond to initial bar inquiry); rule 4-8.4(g)(2) (failure to respond to follow-up bar inquiries); rule 5-l.l(a)(l) (Trust Account Required; Commingling Prohibited); and rule 5-l.l(b) (Application of Trust Funds or Property to Specific Purpose).
Many of these rules were violated multiple times. For instance, rules 4-1.3 (Diligence), 4-1.4(a) (Informing Client of Status of Representation), and 4-1.4(b) (Duty to Explain Matters to Client) were violated in all five cases and with respect to all seven clients.
In deciding the appropriate discipline, the referee considered the following five aggravating factors in cases SC03-151, SC03-1006, SC03-1558, and SC04-449: (1) prior disciplinary history;[1] (2) pattern of misconduct; (3) multiple offenses; (4) bad faith obstruction of the disciplinary proceeding; and (5) substantial experience in the practice of law. Fla. Stds. Imposing Law. Sanes. 9.22(a), (c)-(e), (i). In case SC05-205, the referee considered the following five aggravating factors: (1) prior disciplinary history; (2) bad faith obstruction of the disciplinary proceeding; (3) submission of false evidence, false statements, or other deceptive practices during *608 the disciplinary process;[2] (4) substantial experience in the practice of law; and (5) indifference to making restitution. Fla. Stds. Imposing Law. Sanes. 9.22(a), (e)-(f), (i)-O'). In all five cases, the referee found no mitigating .factors. The referee rejected Feige’s health problems as mitigation because Feige had failed to note such grounds in response to the Bar’s interrogatories regarding mitigating factors.
In each of the five cases, the referee recommended that Feige be suspended from the practice of law for one year and that the suspension run concurrently with the suspensions in the other cases.
In cases SC03-151, SC03-1006, SC03-1558, and SC04-449, the referee recommended that Feige submit to a physical examination as a condition to reinstatement. The referee further recommended that if reinstated, Feige should be placed on probation for two years. As terms of probation, the referee recommended that Feige submit to periodic physical examinations, undergo an “office procedures and record-keeping analysis,” and work under the supervision of an attorney acceptable to The Florida Bar. In case SC04-449, the referee additionally recommended that Feige be required to pay a $100 monthly monitoring fee to the Bar.
In all five cases, the referee recommended that Feige be ordered to pay the Bar’s costs and to make restitution by refunding all fees paid by the clients involved in these cases.
Feige petitioned for review in all five cases, arguing that the referee committed various legal and factual errors and that the recommended discipline was too harsh. The Bar petitioned for review of the referee’s reports in cases SC03-151, SC03-1006, SC03-1558, and SC04-449, arguing that the referee’s recommended discipline was too lenient and seeking a two-year suspension followed by a two-year probationary period.[3]
On January 9, 2006, this Court issued an order suspending Feige from the practice of law pending further action by this Court.
On February 24, 2006, this Court issued an order in case SC05-205, notifying Feige that his filings were not in compliance with various procedural rules and that failure to comply with the rules could result in dismissal of his petition for review in the case.[4] Feige did not subsequently comply, and on April 12, 2006, this Court dismissed Feige’s petition for review. Accordingly, this Court treats the referee’s report in case SC05-205 as uncontested.
ANALYSIS
1. Guilt
We approve the guilt findings in case SC05-205 without discussion because the referee’s report in that case was uneon-tested.
In the remaining four cases, Feige contends that the referee made erroneous *609 findings of law and fact.[5] We find that all of these claims are without merit. Feige failed to show that the referee came to any incorrect conclusions of law that prejudiced his case. Feige also failed to demonstrate that the referee’s findings of fact were clearly erroneous or lacking in evi-dentiary support. See Fla. Bar v. Wohl, 842 So.2d 811, 814 (Fla.2003). We therefore approve the referee’s reports with respect to guilt in cases SC03-151, SC03-1006, SC03-1558, and SC04-449.
2. Discipline
The Bar challenges the recommended sanction of a one-year suspension as being too lenient. The Bar seeks instead a two-year suspension. Feige, on the other hand, claims that a one-year suspension is unwarranted and too harsh. He asserts that the referee failed to take into account the health problems that he suffered during the time that he represented the clients involved in these cases.
This Court is ultimately responsible for determining the appropriate sanction imposed on an attorney in disciplinary proceedings. Consequently, we have held that a referee’s recommendation for discipline receives less deference than a referee’s guilt finding. Fla. Bar v. Sweeney, 730 So.2d 1269,1272 (Fla.1998).
This Court has held that long periods of suspension can be appropriate in eases of client neglect. Fla. Bar v. Shoureas, 892 So.2d 1002, 1009 (Fla.2004) (citing numerous precedents where the Court imposed suspensions ranging from six months to three years for neglecting client matters); see also Fla. Stds. Imposing Law. Sanes. 4.42(b) (providing that suspension is appropriate for lack of diligence when “a lawyer engages in a pattern of neglect and causes injury or potential injury to a client”).
Our prior case law demonstrates that client neglect in combination with other violations can warrant a period of suspension longer than one year. See, e.g., Fla. Bar v. Elster, 770 So.2d 1184 (Fla.2000) (suspending respondent for three years for incompetence, lack of diligence, failing to protect client interests, failing to communicate, charging excessive fees, making misrepresentations to clients, failing to properly hold client property in trust, and issuing misleading business card); Fla. Bar v. Knowles, 534 So.2d 1157 (Fla.1988) (suspending respondent for three years for neglecting client matters, failing to communicate, and misappropriating client funds); Fla. Bar v. Peterman, 306 So.2d 484 (Fla.1975) (suspending respondent for three years for neglecting client -matters, being incompetent, withdrawing without refunding unearned fees, failing to communicate, and misleading clients). In at least one case of extreme client neglect, we approved the recommendation of disbarment. Fla. Bar v. Springer, 873 So.2d 317 (Fla.2004) (disbarring respondent for engaging in multiple acts of neglect, being incompetent, failing to communicate with client, making misrepresentations to client about the work being done, and making further misrepresentations to cover up the deceit).
We find that the referee’s recommendation of a one-year suspension in these cases does not have a reasonable basis in existing case law. See Sweeney, *610 730 So.2d at 1272 (“We will not second-guess a referee’s recommended discipline as long as that discipline has a reasonable basis in existing case law.”). Given Feige’s history of similar misconduct in the past and the numerous violations in each of the instant cases, we find that Feige has exhibited a consistent and ongoing pattern of client neglect that is serious enough to warrant a three-year period of suspension.
Feige’s conduct amounts to a complete lack of diligence in representing his clients. As the referee determined, Feige’s misconduct in the instant cases involves the violation of sixteen different rules in the handling of seven different client matters. Feige not only grossly neglected his clients and their matters, he also gave unsound advice. and misled all parties, including clients, opposing counsel, and trial courts, to cover up his lack of diligence. Because Feige was unresponsive to his clients’ needs, his clients were forced to either resolve their matters on their own or retain other counsel to complete the work Feige should have done. Feige’s violations are further aggravated by his failure to cooperate with the Bar during the Bar’s investigations.
We are concerned that neither the referee’s recommended one-year suspension nor the two-year suspension requested by the Bar recognizes that Feige has a history of disciplinary cases including a prior two-year suspension. We do take into consideration that the past misconduct occurred prior to 1992. However, in 1992, Feige was suspended for two years. We treat cumulative misconduct seriously. See, e.g., Fla. Bar v. Klein, 774 So.2d 685, 691 (Fla.2000) (“[Cumulative misconduct is to be treated more severely than isolated misconduct....”); Fla. Bar v. Laing, 695 So.2d 299, 304 & n. 3 (Fla.1997) (noting the large number of violations in present and prior proceedings and finding “the recommended discipline to be in conflict with numerous cases wherein we imposed greater discipline due to the cumulative effect of multiple violations”). We conclude that the extent of Feige’s misconduct is simply too severe to approve any disciplinary period shorter than three years.
We agree with the referee’s determination that Feige’s health problems were not mitigators for his misconduct. If Feige’s health was severe enough to prevent him from providing adequate representation, it was Feige’s ethical duty to inform his clients of his condition and arrange for alternate counsel. See Fla. Bar v. Horowitz, 697 So.2d 78, 84 (Fla.1997) (finding that respondent’s clinical depression helped to explain but did not excuse respondent’s pattern of neglect of his clients and his failure to respond to communication from the Bar).
However, we also agree with the referee that Feige’s ongoing health problems may impact Feige’s future ability to practice law. We therefore approve the referee’s recommendation that as a condition to reinstatement, Feige must submit to a physical examination and obtain a physician’s opinion from a physician agreed to by the Bar that he is medically fit to actively be engaged in the practice of law. An annual physical examination and opinion shall be required during the period of probation. This Court has recognized that psychological and physical health is a relevant factor in determining an attorney’s fitness to practice law by requiring attorneys in some cases to prove their fitness before they can be reinstated. Fla. Bar v. Pierce, 434 So.2d 314, 315 (Fla.1983) (conditioning reinstatement as member in good standing on proof of physical and mental fitness); Fla. Bar v. Thue, 247 So.2d 319, 320 (Fla.1971) (suspending respondent until respondent demonstrated that he was “mentally and physically capa *611 ble of practicing law”). To prove fitness to practice, this Court has specifically required attorneys to submit to counseling, testing, and physical evaluations. See, e.g., Fla. Bar v. Grosso, 647 So.2d 840, 841 (Fla.1994) (conditioning reinstatement on production of certification by Florida licensed psychiatrist that respondent was fit to resume practice).
We do not agree with the referee that Feige should be supervised by an attorney acceptable to the Bar during his probationary period. We do not believe that such supervision should be necessary since we require Feige to prove rehabilitation before he is readmitted in good standing. To prove rehabilitation, Feige will have to demonstrate to the Bar that he is at that time capable of competently providing legal services to clients.
As a final matter, we do agree with Feige that a refund of legal fees is not appropriate. This Court orders restitution to clients in cases involving excessive fees, illegal fees, or conversion of trust property. See R. Regulating Fla. Bar 3-5.1(i); Fla. Bar v. Smith, 866 So.2d 41, 49 (Fla.2004) (“ ‘[Disciplinary actions cannot be used as a substitute for what should be addressed in private civil actions against attorneys.’ ... Pursuant to rule 3-5.1(i) and case law, this Court does not award restitution to clients unless it is related to excessive or illegal fees or theft of client funds or property.”). Rule 3 — 5.1(i) states that the amount of restitution shall be limited to the amount by which the fee is excessive, the amount by which the fee is illegal, or by the value of the property which was converted. Under this rule, a refund of legal fees would be authorized only in the following two cases: SC03-1558, in which Feige was found guilty of failing to properly hold client property in trust; and SC05-205, in which Feige was found guilty of charging an excessive fee. Even so, the referee in these two cases failed to make sufficient findings of fact to justify a refund. In case SC03-1558, the referee did not place a value on the property that Feige failed to hold in trust and then later converted. In case SC05-205, the referee failed to determine the amount by which the fee was excessive. Therefore, we do not approve the referee’s recommendation that Feige pay restitution to the clients involved in these cases by refunding legal fees.
CONCLUSION
Feige is hereby suspended from the practice of law for three years effective nunc pro tunc January 9, 2006.
Upon completion of his three-year suspension, Feige shall be required to prove rehabilitation in order to be readmitted to The Florida Bar in good standing. Rehabilitation shall not be considered proven until Feige has demonstrated that he is capable of providing competent services to the public as a member of the Bar. As a further condition to reinstatement, Feige shall be required to undergo a physical examination and obtain a physician’s opinion from a physician agreed to by the Bar that he is medically fit to actively be engaged in the practice of law.
Upon reinstatement, Feige shall be placed on probation for two years. During the probationary period, an annual physical examination and physician’s opinion shall be required, and Feige shall also undergo an office procedures and record-keeping analysis by and under the direction of the Bar’s Law Office Management Assistance Service (LOMAS). Feige shall cooperate with LOMAS and shall fully comply with and implement, at Feige’s expense, all recommendations made by LOMAS, which shall be in accordance with the Office Procedures and Record Keeping Guidelines of LOMAS. At a minimum, the *612 LOMAS analysis shall consist of an initial review within thirty days of the court order reinstating Feige and a final review prior to termination of the probationary period confirming compliance with and implementation of the recommendations of LOMAS. LOMAS may require such additional interviews or reviews as it may in its sole discretion deem necessary or advisable. Feige shall pay all fees and expenses of LOMAS incurred or required in connection with the conduct of its analysis. LO-MAS shall provide the Lawyer Regulation Department of The Florida Bar with status reports as to the ordered analysis.
Feige shall pay a monthly monitoring fee of $100 to the Bar. All monthly monitoring fees must be remitted no later than the end of each respective month in which the monitoring fee is due. All payments must be paid to The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300. Failure to pay shall be deemed cause to revoke probation.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Feige in the amount of $18,779.83, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

. In 1992, Feige was suspended for two years for assisting a client to engage in fraudulent conduct and for creating a conflict of interest. Fla. Bar v. Feige, 596 So.2d 433 (Fla.1992). In 1990, Feige received a public reprimand for neglecting a client matter and for failing to inform the client of the resulting dismissal. Fla. Bar v. Feige, No. 74,742 (Fla. Nov. 15, 1990). In 1989, Feige received a private reprimand for charging a clearly excessive fee and for neglecting a client matter.

. Feige willfully refused to accept service of the complaint and then asserted that the Bar’s complaint was never delivéred to him.

. The Bar did not petition for review of the referee’s report in case SC05-205. Feige defaulted in the proceedings in case SC05-205 and did not appear until the hearing on the penalty. The referee's report was submitted more than nine months after the reports in the other four cases.

.Feige failed to submit electronic versions of the initial and reply briefs, failed to arrange for delivery of the hearing transcripts to the Court, and submitted his reply brief one day late. See In re Mandatory Submission of Electronic Copies of Documents, Admin. Order No. AOSC04-84 (Fla. Sept. 13, 2004); R. Regulating Fla. Bar 3-7.7(c)(2)-(3).

. Feige claimed the following legal errors: (1) the referee improperly admitted a client’s written complaint to the Bar; (2) the referee incorrectly found that Feige violated procedural rules when he filed an answer in a divorce action that was not verified; and (3) the referee incorrectly concluded that Feige gave unsound legal advice when he suggested that his client pursue marital assets by having her deceased husband’s estate substituted as a party in her divorce proceedings. Feige also claims that ”[m]ost of the Referee's controlling findings of fact are not supported by evidence.”