PER CURIAM.
We have for review a referee’s report recommending that Respondent Russell Samuel Adler be found guilty of professional misconduct and suspended from the practice of law for thirty days. We have jurisdiction. See art. V, § 15, Fla. Const.
For the reasons more fully explained below, we approve the referee’s findings of fact, as well as her recommendations that Respondent be found guilty of violating the Rules Regulating the Florida Bar. We disapprove the referee’s recommendation that Respondent be suspended for thirty days. Considering Respondent’s improper conduct, and especially his false statements and actions to obtain a letter making false statements from his law firm, we conclude that a ninety-one-day suspension is the appropriate sanction.
FACTS AND PROCEDURAL HISTORY
The Florida Bar filed a complaint against Respondent Russell Samuel Adler, alleging various instances of misconduct relating to misrepresentations made to an apartment board and relating to his failure to use proper client settlement statements in connection with the practice of law. Specifically, the Bar alleged that Respondent had violated Rules Regulating the Florida Bar 3-4.3 (misconduct and minor misconduct), 4-1.5(f)(5) (closing statement to be executed upon conclusion of representation), 4-8.4(a) (violating or attempting to violate the rules, or knowingly assisting or inducing another to do so, or doing so through the acts of others), and 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). A hearing was held before a referee, and subsequently, the referee submitted her report to the Court, in which she made the following findings of fact.
Respondent was admitted to The Florida Bar on October 15,1986. From February 1, 2005, until its dissolution on or about November 1, 2009, Respondent was employed as an attorney by the law firm of Rothstein, Rosenfeldt, and Adler (“RRA”). Partners Rothstein and Rosenfeldt were the only equity shareholders in RRA. Around the time Respondent joined RRA in 2005, Mr. Rothstein advised Respondent that he would receive equity shares in RRA if Respondent met certain goals. However, despite his use of the title “Shareholder” and being designated as the vice president of RRA, Respondent testified that he- never received any equity shares in RRA.
While employed by RRA, in or about August 2009, Respondent purchased a cooperative apartment in New York City for which he obtained financing from Mr. Rothstein and/or entities created and funded by Mr. Rothstein. Respondent borrowed funds and signed a promissory note and mortgage for a loan that represented approximately 90% of the purchase price. Respondent took a payroll advance from RRA for the remaining 10% of the purchase price for which he also signed a promissory note. Although Respondent disclosed to the cooperative apartment board that he had borrowed 90% of the purchase price, he did not disclose that he had borrowed the other 10% by taking the payroll advance for which Respondent had signed a promissory note. The payroll advance was another loan. Respondent believed that the cooperative apartment board had a policy not to approve the purchase of a cooperative apartment where 100% of the purchase price was financed.
Also, Respondent advised a real estate broker involved in the purchase of the cooperative apartment, and the cooperative apartment board through the real es *246 tate broker, that Respondent had a 20% equity share in RRA. Although Respondent subjectively thought that he should have the equity share, he knew that he did not. Thus, Respondent’s assertions were untrue. He never had any equity shares in RRA at any time.
Respondent asked Mr. Rothstein, an equity shareholder in RRA, to direct the Chief Financial Officer for RRA to issue a letter to the cooperative apartment board that misrepresented Respondent’s financial status as a shareholder, Respondent’s finances, and Respondent’s access to additional funds. The letter, with modifications, was issued by the chief financial officer to the cooperative board.
Moreover, Respondent was the chair of RRA’s tort litigation practice group. During Respondent’s tenure managing the practice group for approximately four years, neither Respondent nor any other attorney who participated in personal injury cases associated with the tort litigation cases properly executed the client settlement statements in accordance with the requirements of the Rules Regulating The Florida Bar. See R. Regulating Fla. Bar 4-1.5(f)(5) (stating that the copy of the closing statement “shall be executed by all participating lawyers, as well as the client, and each shall receive a copy.”). None of the settlement statements prepared by Respondent’s department contained a space or line for a lawyer to sign the settlement statement. Respondent testified that he was responsible for supervising the attorneys in his group and for reviewing the settlement statements.
After making these factual findings, the referee recommended that Respondent be found guilty of violating rule 3-4.3 (misconduct and minor misconduct), rule 4-1.5(f)(5) (closing statement to be executed upon conclusion of representation), rule 4-8.4(a) (violating or attempting to violate the rules, or knowingly assisting or inducing another to do so, or doing so through the acts of others), and rule 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). As for discipline, the referee recommended that Respondent be suspended from the practice of law for thirty days. In recommending this sanction, the referee found two aggravating factors — a dishonest or selfish motive and substantial experience in the practice of law. The referee also found the following mitigating factors: absence of prior disciplinary record; full and free disclosure to disciplinary board and cooperative attitude toward proceedings; character or reputation; and remorse. Costs were awarded to The Florida Bar as the prevailing party, in the amount of $3,671.75.[1]
ANALYSIS
Neither party challenges the referee’s findings of fact or recommendations of guilt. The Bar challenges the referee’s recommended sanction of a thirty-day suspension, arguing that a ninety-one-day suspension is the appropriate sanction. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing *247 case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
The case law and the Standards for Imposing Lawyer Sanctions support a suspension where, as in this case, a respondent engages in dishonest conduct that negatively impacts the legal profession. See Fla. Bar v. Schultz, 712 So.2d 386, 388 (Fla.1998) (“[Ejngaging in conduct involving dishonesty, misrepresentation, fraud, or deceit warrants suspension”); Fla. Stds. Imposing Law. Sanes. 7.2 (“Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system”).
With regard to the length of the suspension, Respondent asserts that the referee’s recommended sanction of a thirty-day suspension is supported. The Bar argues that a ninety-one-day suspension is appropriate. In light of Respondent’s misconduct in seeking, from his law firm, a letter with false information about his position and financial status, and given his deliberate false statements to the cooperative apartment board, we find that a ninety-one-day suspension is appropriate.
In Florida Bar v. Nuckolls, 521 So.2d 1120 (Fla.1988), the respondent represented a real estate partnership which was selling townhouse units. Even though Nuckolls knew that purchasers of seven of the units paid only $36,000 per unit, he prepared contracts and closing documents that falsely indicated that the units would be sold for $45,000 each with a $9,000 down payment. Id. at 1121. Lenders advanced mortgage loans on those seven units based at least partly on the respondent’s written representations that the purchasers had made or would make the down payments and that the $36,000 reflected only 80% of the purchase price. The respondent received a check from one of the partners to cover four of the down payments, but the respondent never cashed the check. Instead, he sent lenders copies of the check as proof that the down payments had been received, even though the respondent knew the down payments had not been made. Finally, the respondent acted improperly while in the role as a land trustee. Id. The Court characterized the respondent’s misconduct as “an active breach of trust” and imposed a ninety-day suspension. Id. at 1122.
Here, as in Nuckolls, Respondent made misrepresentations regarding the finances to a third party. Moreover, Respondent actively sought a letter from his law firm in order to further his scheme to misrepresent his financial status. The respondent in Nuckolls was given a ninety-day suspension, but that case was decided in 1988. Since then, this Court has moved towards stronger sanctions for attorney misconduct. See Fla. Bar v. Rotstein, 835 So.2d 241, 246 (Fla.2002) (stating that some of the cited cases “are dated and do not reflect the evolving views of this Court.... In recent years, this Court has moved towards stronger sanctions for attorney misconduct.”). Respondent’s deliberate and deceptive conduct, along with his failure to comply with rule 4-1.5(f)(5), warrants a ninety-one-day suspension. Cf. Fla. Bar v. Hall, 49 So.3d 1254, 1261 (Fla.2010) (“The Court expects ‘members of The Florida Bar to conduct their personal business affairs with honesty and in accordance with the law.’ ”) (quoting Fla. Bar v. Baker, 810 So.2d 876, 882 (Fla.2002)).
CONCLUSION
Accordingly, we approve the referee’s findings of fact and recommendations of guilt. We disapprove the referee’s recommended discipline and instead impose a ninety-one-day suspension. Russell Samuel Adler is hereby suspended from the practice of law for ninety-one days. The suspension will be effective thirty days *248 from the date of this opinion so that Adler can close out his practice and protect the interests of existing clients. If Adler notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Russell Samuel Adler shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further, Adler shall accept no new business from the date of this opinion until he is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Russell Samuel Adler in the amount of $4,891.35, for which sum let execution issue.
It is so ordered.
POLSTON, C.J., and PARIENTE, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.
LEWIS, J., dissents.

. The Bar has filed an "Amended Statement of Costs” which addresses costs the Bar has incurred in bringing this case before the Court. Respondent did not challenge the Bar’s amended statement. We approve the Bar’s request for the additional costs, and hereby award costs to the Bar in the total amount of $4,891.35.