# Supreme Court of Florida

———————

No. SC14-1942

———————

**THE FLORIDA BAR,**
Complainant,

vs.

**BYRON GREGORY PETERSEN,**
Respondent.

[July 5, 2018]

PER CURIAM.

We have for review a referee's report recommending that Respondent, Byron Gregory Petersen, be found guilty of professional misconduct and suspended from the practice of law for a period of ninety-one days. We have jurisdiction. *See* art. V, § 15, Fla. Const. As more fully explained below, after consideration of the referee's report, the parties' briefs, the response to the Court's order to show cause why the referee's recommended discipline should not be disapproved and a more severe sanction, up to a three-year suspension, be imposed, and The Florida Bar's (Bar) reply, we approve the recommendations

pertaining to the alleged rule violations but disapprove the proposed discipline and suspend Petersen for a period of three years.

## BACKGROUND

In October 2014, the Bar filed a complaint alleging that Respondent Petersen engaged in misconduct in violation of the Rules Regulating the Florida Bar (Bar Rules). A referee was appointed to consider the matter. The referee submitted a report and recommendations for the Court's consideration. The Court considered the referee's report, and Petersen's challenges thereto. Thereafter, on November 6, 2017, the Court issued an order directing Petersen to show cause why the referee's recommended discipline, a ninety-one day suspension, should not be disapproved and a more severe sanction, up to and including a three-year suspension, imposed. Petersen filed a response to the Court's order and the Bar filed a reply. Petersen also filed a "Motion for Sanctions Directed to the Response of The Florida Bar's Staff to Show Cause Order," as well as several notices of supplemental authority that are primarily aimed at establishing the correctness of his actions.[1]

## FACTS

Beginning in 2005, Petersen was retained by Robert and Wendy Gielchinsky to represent the couple and their various business organizations. The testimony

---

1. Petersen's motion for sanctions is discussed below, while his notices of supplemental authority pertaining to the rule violations are not.

indicates that Petersen represented the Gielchinskys in a number of legal matters; however, three cases are at issue here:

*The Vibo Case.*  In late 2004 or early 2005, Robert Gielchinsky and his company, the North American Tobacco Import Company, filed a lawsuit against the Vibo Corporation in the Eleventh Judicial Circuit, alleging breach of settlement agreement and other claims (the *Vibo* case).  This lawsuit arose out of an earlier 2002 case, where Gielchinsky sued Vibo for interference with his intellectual property rights to the Bronco cigarette brand; the case settled when Gielchinsky assigned his intellectual property rights to Vibo in return for certain specified payments.  In this subsequent lawsuit, Gielchinsky alleged that Vibo breached the settlement agreement by failing to make the required payments.  The complaint was amended several times, but ultimately sought both monetary damages and return of the intellectual property rights.

Petersen was originally brought in as co-counsel on the *Vibo* case.  His original fee agreement appears to have provided for a $3,000 monthly retainer fee, as well as some percentage of the recovery.  However, Petersen later took over as sole counsel on the case, and his fee agreement was modified several times.  In February 2008, Petersen and the Gielchinskys signed an "Authority to Represent and Contingency Fee Agreement," where Petersen would receive ten percent of

"any recovery" resulting from the *Vibo* case.[2]  Subsequently, in September 2008, Petersen and the Gielchinskys signed an "Amendment to February 2008 Authority to Represent and Contingency Fee Agreement," giving Petersen fifteen percent of "any recovery from any source" resulting from the *Vibo* case.  Then in April 2010, Petersen drafted, and the Gielchinskys signed, a "Retainer Agreement Addendum." The addendum stated:

> In the Vibo case I think that my firm's fee agreement with you and Wendy not only covers a percentage "recovery" against a money judgment but also would cover a percentage "recovery" from any assets transferred to you in settlement or through trial (such as a transfer of the Bronco brand to you) or a hybrid of the two. The total recovery for the aforementioned representation is not to exceed $5,000,000.00 (five million dollars).  Please print this out, sign below, scan this, and email the scan PDF to me letting me know that you agree with this clarification.

The addendum is signed and dated April 9, 2010.

The referee found that litigation in the *Vibo* case continued on for several years, and as the case progressed it became clear that the intellectual property rights to the Bronco brand would be the portion of the settlement worth the greatest

---

2.  It appears this modification resulted from the dissolution of a personal and professional partnership between Petersen and another lawyer, Kim Hawthorne.  There is an email in the record from June 2007 indicating that because of "Kim's malpractice while she worked on your cases and the ensuing derivative liability of P&H" the Gielchinskys and Petersen agreed that Petersen would accept a reduced ten percent contingency fee.  Petersen's email advises the Gielchinskys to consult an independent attorney before signing the new agreement.

value, while the monetary damages would be relatively small. The Gielchinskys testified they believed that Petersen's fee would be based on the monetary recovery in the case, while Petersen stated that the fee agreement always contemplated a percentage of the non-monetary recovery. The referee found:

> Whether with [the April 2010] addendum or whether with the initial fee agreement or its subsequent revisions, Respondent gained a pecuniary interest in the litigation which could be adverse to the Gielchinskys. Respondent failed to advise the Gielchinskys in writing that they could and/or should seek independent legal counsel to review the initial fee agreement or subsequent revisions . . . or addendum prior to execution and failed to give them the opportunity to do so as required by the Rules Regulating The Florida Bar.

The referee also heard testimony from Petersen's former paralegal, Christina Broder. She testified that Petersen made an intentional effort to create conflicts of interest with the Gielchinskys. The referee stated:

> Because Respondent was handling many of the Gielchinskys' cases on a contingency fee basis, Respondent could not simply withdraw. If Respondent chose to withdraw from the contingency case without good cause, Respondent would be unable to claim an interest in any recovery received after his withdrawal. In order to withdraw from the cases and still have a claim to fees, Respondent had to show good cause. A conflict of interest with a client is good cause to withdraw from a contingency fee case and still have the ability to make a claim for fees.

In his effort to create conflicts, the referee found that Petersen neglected cases, he failed to effectively communicate with the Gielchinskys, he lost or misplaced documents and evidence that the Gielchinskys were entitled to, and he made misrepresentations to the clients.

In addition, the evidence indicates the case settled in February 2011. Following the settlement, both Petersen and his co-counsel, Ronald Weil (who had been retained in anticipation of a trial), filed charging liens. Petersen was represented by an independent attorney on the charging lien matter. In September 2011, the trial court held a hearing to address the liens; among other witnesses, the court heard testimony from Attorney Robert Josephsberg on the ethics of the fee agreement. Thereafter, on January 26, 2012, the court entered an Order which found, in relevant part, as follows:

> This Court finds that pursuant to the terms of the retainer agreement and an email addendum Byron G. Petersen, P.A. is to receive fifteen percent (15%) of the total settlement monetary funds of two hundred twenty five thousand dollars and no cents ($225,000), which is thirty three thousand seven hundred fifty dollars and no cents ($33,750.00).
>
> This Court finds that pursuant to the terms of the retainer agreement Byron G. Petersen, P.A. is to credit Plaintiffs twenty four thousand dollars and no cents ($24,000.00) that will be applied against the fifteen percent (15%) of the settlement monetary funds allocated to Byron G. Petersen. P.A.
>
> This Court finds that pursuant to the terms of the retainer agreement Byron G. Petersen, P.A. is to also receive his documented costs, accompanied with a cost statement and supporting receipts to be finalized at a future hearing.
>
> This Court finds that Byron G. Petersen, P.A. is entitled to a fifteen percent (15%) of the Plaintiffs consent Judgment for seven million dollars and no cents ($7,000,000) against Vibo Corporation and Trademark Holdings, LLC entered in *Gielchinsky et. Al v. Vibo Corporation*, Case No.: 04-23115 CA 22, in favor of Gielchinsky/North American Tobacco Co and/or his/it's assigns.

*This Court finds that Byron G. Petersen, P.A. is entitled to a fifteen percent (15%) ownership interest in the subject intellectual property "Bronco". However, at such time as Byron Petersen, P.A. realizes the sum of five million dollars and no cents ($5,000,000) from any income stream emanating from the BRONCO brand, then and in that event, Byron Petersen's said fifteen percent (15 %) ownership interest in the subject intellectual property "BRONCO" shall automatically revert back to Plaintiff, Robert Gielchinsky by operation of law.*

This Court enters a six (6) month stay to allow Plaintiffs to pursue business ventures relating to the subject intellectual property whereby Byron G. Petersen, P.A. may not foreclose any liens or attempt to damage any business interests or operations related to the intellectual property that Plaintiff may establish or attempt to establish.

(Emphasis added.)

*The Aldar Case.* Beginning in 2008, Petersen represented another of Robert Gielchinsky's companies, the Aldar Tobacco Group, in litigation in the United States District Court for the Southern District of Florida. In July 2011, Petersen withdrew as counsel for Aldar. Subsequently, in September 2011, he filed a notice of charging lien. Aldar, through its successor counsel, filed a motion to strike the lien, arguing that Petersen represented Aldar on a contingency basis, and because he withdrew from the representation prior to the conclusion of the case, he was not entitled to recover fees.

In July 2012, a federal magistrate held a hearing on the matter. During the hearing, Robert Gielchinsky testified that Petersen agreed to take the *Aldar* case on a contingency fee basis. Petersen's former paralegal, Ms. Broder, also testified

that it was her understanding Petersen had taken the case on a contingency fee. In contrast, Petersen testified that he had undertaken the case on an hourly fee arrangement. However, the referee noted that during both the federal hearing and in the proceedings here, evidence was presented that Petersen had submitted documents in his personal bankruptcy case indicating that he represented Aldar on a contingency fee basis. On February 7, 2013, the magistrate issued an order finding the testimony from Mr. Gielchinsky and Ms. Broder credible, and concluded that Petersen took the *Aldar* case on a contingency fee. The magistrate noted that, according to Florida case law, an attorney's entitlement to recover fees under a contingency fee agreement where the attorney withdraws prior to the occurrence of the contingency depends on whether the attorney voluntarily withdrew, or whether the attorney is either discharged without cause or the client's conduct makes withdrawal necessary. On this issue, the magistrate found:

> The Court finds that it was not the client's conduct which necessitated Mr. Petersen's withdrawal from representation in this case. In fact, it was Petersen's obstructive behavior, adverse to the client's interest in the Vibo case, that created the conflict. The credible evidence presented demonstrates that Petersen was disappointed with the settlement in Vibo, and sought to extract a better deal for himself from his client. . . . Now, in this case, Petersen is demanding payment despite his withdrawal on the eve of trial, but he has presented no credible evidence substantiating the hourly fee agreement he contends is operative.

Accordingly, the magistrate granted the motion to strike the charging lien. The United States District Court adopted the magistrate's order, and the United States Court of Appeals for the Eleventh Circuit affirmed.

*The Pool People Case.* In 2005, Petersen represented Wendy and Robert Gielchinsky in a lawsuit in Broward County, against a company that had installed a pool in their family home. The referee found that the Gielchinskys paid Petersen $6,500 for the representation.

Petersen filed the complaint in the *Pool People* case in March 2005, and conducted some preliminary discovery; however, the referee found that he took little or no significant action in the case thereafter. On August 4, 2009, the circuit court dismissed the case for lack of prosecution. Petersen appealed the dismissal to the Third District Court of Appeal, and the district court reversed the circuit court's order. The case was reinstated in February 2011. However, the referee found that Petersen again failed to take any significant action.

In the proceedings before the referee, the Gielchinskys each testified that Petersen never communicated with them about the progress of the *Pool People* case despite their attempts to discuss it with him, he did not notify them that they needed to hire an expert, and he did not tell them that the case could be dismissed for lack of prosecution. In contrast, Petersen testified that he did not move the case along because the Gielchinskys told him to focus on other more important cases,

and because the Gielchinskys never hired an expert to prove the case. The referee found: "By failing to take any significant action on the Pool People case for his clients, Respondent failed to competently and diligently represent the Gielchinskys."

After the *Pool People* case was reinstated, in June 2011 Petersen filed a motion to withdraw as counsel (based on the conflicts of interest in the *Vibo* case). At that time, the Gielchinskys lived out of the state and the referee found that Petersen failed to coordinate with them on a hearing date. When the hearing was held, Petersen submitted a proposed order to the presiding judge, granting the motion to withdraw. The order indicated that opposing counsel did not object. The referee found:

> In truth and in fact, Respondent had failed to give notice of the hearing to opposing counsel. . . . Opposing counsel was unable to voice any objection or agreement because counsel was unaware of the hearing. By making such statement in the Order submitted to the judge, Respondent made a material misrepresentation to the court.

The order also stated the Gielchinskys had no objection to Petersen's withdrawal, when in fact they did object to Petersen "abandoning" the case.

Finally, in addition to Petersen's conduct in his representation of the Gielchinskys, the referee also found that he did not timely respond to the Bar's inquiries in this disciplinary proceeding. Ms. Broder filed a complaint with the Bar in September 2011; on September 7, the Bar sent a letter to Petersen at his record

Bar address asking him to respond to the complaint. Petersen, through counsel, filed several requests for extensions of time; the final extension directed Petersen to respond by February 15, 2012. Petersen did not respond within the time allowed. However, in November 2012, he submitted a written response to the Investigating Member of the grievance committee; he did not provide a copy of the response to the Bar.

Based upon the above findings of fact, the referee recommended that Petersen be found guilty of violating the following Bar Rules: 3-4.2 (violations of the Rules of Professional Conduct is cause for discipline); 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice may constitute cause for discipline); 4-1.1 (a lawyer must provide competent representation to a client); 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4(a) (a lawyer shall: promptly inform the client of any decision or circumstance that requires the client's informed consent; reasonably consult with the client about the means by which to accomplish the client's objectives; keep the client reasonably informed about the status of the matter; and promptly comply with the lawyer's reasonable requests for information); 4-1.5(a) (an attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee); 4-1.8(a) (a lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership,

possessory, security, or other pecuniary interest adverse to a client); 4-3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal); 4-4.1(a) (in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person); 4-4.4(a) (in representing a client, a lawyer may not use means that have no substantial purpose other than to embarrass, delay, or burden a third person); 4-8.4(a) (a lawyer shall not violate the Rules of Professional Conduct); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice); and 4-8.4(g) (a lawyer shall not fail to respond, in writing, to any official inquiry by bar counsel or a disciplinary agency).

In determining the recommended sanction, the referee found five aggravating factors:  Florida Standards for Imposing Lawyer Sanctions (Standards) 9.22(a) (prior disciplinary history); 9.22(b) (dishonest or selfish motive); 9.22(c) (a pattern of misconduct); 9.22(d) (multiple offenses); and 9.22(i) (substantial experience in the practice of law).  The referee also found one mitigating factor: Standard 9.32(g) (character or reputation).  Additionally, before recommending discipline, the referee considered Standards 4.42 (Suspension is appropriate when: a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or b) a lawyer engages in a pattern of neglect and

causes injury or potential injury to a client), 6.12 (Suspension is appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action), and 7.2 (Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system). Finally, the referee considered case law that supported a suspension in length between ten days and one year.

Based on her findings of fact, recommendations as to guilt, the aggravating and mitigating factors, the Standards, and case law, the referee recommended that Petersen be suspended from the practice of law for ninety-one days. As discussed below, we disapprove the recommended discipline and determine that Petersen's misconduct warrants a three-year suspension.

## ANALYSIS

Petersen challenges the referee's recommendation that he be found guilty of violating the Bar Rules as alleged in the Bar's complaint. To the extent he challenges the referee's findings of fact as to each rule violation, the Court's review of such matters is limited, and if a referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. *Fla. Bar v. Frederick*,

- 13 -

756 So. 2d 79, 86 (Fla. 2000); *see also Fla. Bar v. Jordan*, 705 So. 2d 1387, 1390 (Fla. 1998). To the extent Petersen challenges the recommendations as to guilt, the referee's factual findings must be sufficient under the applicable rules to support the recommendations. *See Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005).

Here, it is clear that Petersen devoted a significant portion of his practice to representing the Gielchinskys in various litigation, including the *Vibo* case that had the potential to be worth millions of dollars. In reviewing the evidence and testimony that was presented to the referee, it is apparent that Petersen and the Gielchinskys have very different views of the events, and both Petersen and the Bar presented testimony and evidence that arguably would support their positions. Ultimately, this case is one that comes down to witness credibility—the referee found the testimony from Robert and Wendy Gielchinsky and other Bar witnesses more credible than Petersen's testimony. This Court has long held, "The referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." *Fla. Bar v. Tobkin*, 944 So. 2d 219, 224 (Fla. 2006) (quoting *Fla. Bar v. Thomas*, 582 So. 2d 1177, 1178 (Fla. 1991)). As discussed below, we defer to the referee's credibility assessments and approve the recommendations as to guilt.

*Rule Violations*

**Bar Rules 4-1.1 and 4-1.3.**  The referee found that Petersen failed to act competently and diligently on behalf of his clients, in violation of Bar Rules 4-1.1 and 4-1.3.  This finding stems from Petersen's conduct representing the Gielchinskys in the *Pool People* case, which was filed in March 2005.  The testimony and evidence before the referee indicates that there were a number of filings and other record activity through 2007; however, from 2007 to 2009 there was little or no activity in the case.  On August 4, 2009, the trial court dismissed the *Pool People* case for lack of prosecution.  Petersen argues that he intentionally did not move the case forward based on direction from the Gielchinskys, who asked him to focus on other, higher priority cases.  While there is some support for Petersen's claim, i.e., Robert Gielchinsky testified that he told Petersen to treat the *Vibo* case as a higher priority and Petersen's opposing counsel in the *Pool People* case also testified that neither party wanted the case to move forward during this period, and that neither party wanted to continue spending money on legal fees to pursue a $1,300 lien, both Wendy and Robert Gielchinsky testified that they never told Petersen to stop prosecuting the case altogether, and Petersen never told them the case could be subject to dismissal.  It is evident that the referee weighed the credibility of the witnesses, and found the Gielchinskys' testimony more credible. The Court has made clear that an attorney cannot meet his burden to show that a

- 15 -

referee's credibility assessments are incorrect "by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee's findings." *Fla. Bar v. Glueck*, 985 So. 2d 1052, 1056 (Fla. 2008). Moreover, even if the Gielchinskys did tell Petersen to focus his attention on higher priority cases, Petersen nonetheless had an ethical obligation to both his clients and the legal system to ensure that the case was moving forward. Accordingly, we approve the referee's recommendation that Petersen violated Bar Rules 4-1.1 and 4-1.3.

**Bar Rule 4-1.4(a).** Bar Rule 4-1.4(a) provides in relevant part that a lawyer shall promptly inform the client of any decision or circumstance that requires the client's informed consent; reasonably consult with the client about the means by which to accomplish the client's objectives; keep the client reasonably informed about the status of the matter; and promptly comply with the client's reasonable requests for information. The referee's recommendation as to this rule violation stems at least in part from Petersen's representation in the *Pool People* case. The referee also found that among his other efforts to create conflicts, Petersen "neglected cases and failed and refused to effectively communicate with the Gielchinskys."

The Gielchinskys testified that Petersen failed to communicate with them about hearings and other events in the *Pool People* case. However, Petersen

submitted evidence of a number of emails exchanged with Robert Gielchinsky advising him of various filings, hearings, or discussions with opposing counsel. The bulk of these emails are dated in 2007 (though there are some in 2009 related to the dismissal). Still, there is no indication that Petersen communicated with the clients about the *Pool People* case at all from 2007 to 2009, and particularly as to the important fact that their case may be subject to dismissal based on inactivity. Therefore, we approve the referee's recommendation that Petersen violated Bar Rule 4-1.4(a).

**Bar Rule 4-1.5(a).** Bar Rule 4-1.5(a) provides that an attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee. Here, the Bar's complaint alleged that Petersen's $6,500 fee in the *Pool People* case constituted an excessive fee because he took little or no action to prosecute the case. At the hearing before the referee, the Gielchinskys testified that they had made frequent attempts to communicate with Petersen about moving the case forward, and that Petersen failed to ever inform them that they needed to hire an expert to support the case. Based upon the foregoing, we approve the referee's recommendation that Petersen be found guilty of violating Bar Rule 4-1.5(a).

**Bar Rule 4-1.8(a).** Bar Rule 4-1.8(a) provides that a lawyer shall not enter into a business transaction with a client "or knowingly acquir[e] an ownership,

possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer's fee or expenses" unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in writing; (2) the client is advised in writing and given a reasonable opportunity to seek the advice of independent legal counsel; and (3) the client gives informed consent in writing. The comment to Bar Rule 4-1.8 explains that the rule does not apply to "ordinary fee arrangements between client and lawyer, which are governed by rule 4-1.5, although its requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment for all or part of a fee."

Here, there is no dispute that Petersen did not advise the Gielchinskys to seek independent legal counsel before executing the September 2008 fee agreement or the April 2010 addendum to that agreement. A threshold issue, however, is the question whether these agreements gave Petersen an "ownership, possessory, security, or other pecuniary interest adverse to a client," such that he was required to comply with the provisions of Bar Rule 4-1.8(a). As found by the referee, Petersen's fee agreements, and in particular the 2010 addendum, gave him a pecuniary or possessory interest in the litigation that was adverse to the Gielchinskys' interests.

In September 2008, Petersen and the Gielchinskys signed an "Amendment to February 2008 Authority to Represent and Contingency Fee Agreement" giving Petersen fifteen percent of "any recovery from any source" resulting from the *Vibo* case. In April 2010, Petersen drafted a "Retainer Agreement Addendum," which stated:

> In the Vibo case I think that my firm's fee agreement with you and Wendy not only covers a percentage "recovery" against a money judgment but also would cover a percentage "recovery" from any assets transferred to you in settlement or through trial (such as a transfer of the Bronco brand to you) or a hybrid of the two. The total recovery for the aforementioned representation is not to exceed $5,000,000.00 (five million dollars). Please print this out, sign below, scan this, and email the scan PDF to me letting me know that you agree with this clarification.

The Gielchinskys signed the addendum on April 9, 2010. The *Vibo* case settled in February 2011, and the settlement included, among other recovery, the return of the intellectual property rights for the Bronco cigarette brand to the Gielchinskys. Both Petersen and his co-counsel, Ronald Weil, filed charging liens to secure their fees. Judge Venzer, the presiding judge in the *Vibo* case, held a hearing to address the charging liens in September 2011. Following the hearing, on January 26, 2012, Judge Venzer entered her order finding that Petersen was entitled to receive fifteen percent of the monetary judgment, fifteen percent "of the Plaintiffs [sic] consent Judgment for seven million dollars and no cents ($7,000,000)," and as follows:

> This Court finds that Byron G. Petersen, P.A. is entitled to a fifteen percent (15%) ownership interest in the subject intellectual property

"Bronco". However, at such time as Byron Petersen, P.A. realizes the sum of five million dollars and no cents ($5,000,000) from any income stream emanating from the BRONCO brand, then and in that event, Byron Petersen's said fifteen percent (15 %) ownership interest in the subject intellectual property "BRONCO" shall automatically revert back to Plaintiff, Robert Gielchinsky by operation of law.

Given these facts, Petersen's fifteen percent contingency fee was to be calculated based on the Gielchinskys' total recovery in the *Vibo* settlement, including both their monetary recovery and their non-monetary recovery in the form of the intellectual property rights to the Bronco cigarette brand. It was through his charging lien and Judge Venzer's order that Petersen acquired a fifteen percent "ownership interest" in the brand (an interest that would revert back to the Gielchinskys when Petersen's fee reached its cap at $5 million).

This Court has disciplined lawyers for violations of Bar Rule 4-1.8(a) for engaging in a variety of different transactions with a client. In *Florida Bar v. Doherty*, 94 So. 3d 443 (Fla. 2012), the Court disbarred a lawyer who performed both legal and financial investment services for a client, including brokering the sale of annuities that would have resulted in a significant commission for the lawyer; a portion of Doherty's commission would have automatically been paid to the seller of the annuities to satisfy Doherty's debt to the company. Doherty did not advise the client of his financial interest in the transaction. In *Florida Bar v. Herman*, 8 So. 3d 1100 (Fla. 2009), the Court suspended a lawyer for eighteen months for investing in a company that was in direct competition with a client's

company, and for hiring his client's top salesman to run the company, without disclosing his activities to the client. In *Florida Bar v. Ticktin*, 14 So. 3d 928 (Fla. 2009), the Court suspended an attorney for ninety-one days for taking over his client's role as chairman and CEO of the client's corporation without advising his client in writing of the conflicts of interest. And in *Florida Bar v. Maynard*, 672 So. 2d 530 (Fla. 1996), the Court disbarred an attorney for, among other misconduct, convincing his client to loan money to a company in which the attorney had a substantial interest, without reducing the transaction to writing or advising the client to seek independent legal advice.

Here, as the facts in this case demonstrate, when a client's recovery includes some form of non-monetary recovery with no precise or set value, it may be harder to determine how the lawyer's fee will be calculated and paid. Contingency fee agreements where a lawyer receives some percentage of the value of a non-monetary asset, like property or intellectual property rights, have a greater potential to result in a lawyer's interests becoming adverse to those of the client. Accordingly, we conclude that such agreements fall within Bar Rule 4-1.8(a), such that the lawyer is required to ensure that the transaction is fully disclosed and fair to the client, and the client is given the opportunity to seek independent legal advice. Because Petersen admits he did not take such steps, we approve the referee's recommendation of guilt.

**Bar Rules 4-3.3(a)(1), 4-8.4(c), and 3-4.3.** The referee found that Petersen made material misrepresentations to a court, in violation of three Bar Rules. Bar Rule 4-3.3(a)(1) provides that a lawyer shall not knowingly make a false statement of fact or law to a tribunal; Bar Rule 4-8.4(c) states that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; and Bar Rule 3-4.3 provides that the commission by a lawyer of any act that is unlawful or contrary to honesty and justice may be cause for discipline.

These rule violations stem from Petersen's motion to withdraw in the *Pool People* case—the referee found that Petersen made material misrepresentations of fact in a proposed order that he submitted to the trial court, granting the motion. This finding is supported in the record. The Bar submitted a copy of the order, signed by the trial judge in June 2011. The order states that counsel for the defendant "has interposed no objection to the motion." In fact, Mr. Shalek testified before the referee that he did not have notice of Petersen's motion to withdraw, and thus he had no opportunity to raise an objection. Accordingly, the Court approves the referee's recommendation that Petersen be found guilty of violating these Bar Rules.

**Bar Rules 4-4.1(a) and 4-4.4(a).** The referee found Petersen guilty of violating Bar Rules 4-4.1(a) and 4-4.4(a). Rule 4-4.1(a) provides that a lawyer, in the course of representing a client, shall not knowingly make a false statement of

material fact or law to a third person. Rule 4-4.4(a) states that a lawyer, in representing a client, may not use means that have no substantial purpose other than to embarrass, delay, or burden a third person.

The referee found that Petersen fostered an adversarial relationship with the Gielchinskys to justify his decision to withdraw as their attorney and still preserve his right to collect what he anticipated would be a significant amount in attorney's fees. Evidence at the hearing established that Petersen created conflict with the Gielchinskys when it became apparent that the *Vibo* case would not result in a significant monetary judgment, and "he just decided he didn't want to deal with it anymore." A number of emails introduced at the hearing, exchanged between Petersen, Ms. Broder, and the Gielchinskys, included hostile language and threats, and demonstrate their strained relationship. Additionally, there is the February 2013 order issued by the federal magistrate in the *Aldar* case. In that case, the magistrate, like the referee here, heard testimony from Robert Gielchinsky, Ms. Broder, and Petersen, and concluded that Petersen manufactured conflicts. Therefore, we approve the referee's recommendation that Petersen be found guilty of violating Bar Rule 4-4.1(a) and 4-4.4(a).

**Bar Rule 4-8.4(d).** Bar Rule 4-8.4(d) provides that a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice. Petersen's failure to act competently and diligently in the

*Pool People* case, resulting in its dismissal, his failure to communicate effectively with his clients, his misstatements of fact to a court, and his adversarial relationship with his clients in the *Vibo* case that resulted in additional litigation—support the referee's recommendation that Petersen's conduct was prejudicial to the administration of justice, in violation of this rule.

**Bar Rule 4-8.4(g).** The referee found that Petersen failed to timely respond to an official inquiry from the Bar, in violation of Bar Rule 4-8.4(g). That rule provides that a lawyer shall not fail to respond, in writing, to any official inquiry by Bar counsel or to a disciplinary agency when Bar counsel or the agency is conducting an investigation into the lawyer's conduct. Petersen argues that the referee erred in finding a violation of this rule because he did prepare a response to the Bar's inquiry and submitted it to his counsel, though counsel never forwarded the response to the Bar. While Petersen submitted a copy of the response at the hearing before the referee he did not call any witnesses, in particular his attorney from that time, to verify the response. The referee heard Petersen's testimony on this issue and found that such testimony was not credible. Accordingly, we approve the recommendation that Petersen be found guilty of violating Bar Rule 4-8.4(g).

**Bar Rules 3-4.2 and 4-8.4(a).** Bar Rule 3-4.2 provides that violation of the Rules of Professional Conduct is cause for discipline. Bar Rule 4-8.4(a) provides

in pertinent part that a lawyer shall not violate the Rules of Professional Conduct. Here, in violating Bar Rules 3-4.3, 4-1.1, 4-1.3, 4-1.4(a), 4-1.5(a), 4-1.8(a), 4-3.3(a)(1), 4-4.1(a), 4-4.4(a), and 4-8.4(c-d, g), Petersen violated Bar Rules 3-4.2 and 4-8.4(a).

*Discipline*

In reviewing a referee's recommendation as to discipline, the Court's scope of review is broader than that afforded to the referee's findings of fact, because it is ultimately the Court's responsibility to determine the appropriate discipline. *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989). In addition, the Court's decision to either accept or reject the recommended discipline depends upon whether there is a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. *See Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999). And significantly, the Court has moved towards imposing harsher sanctions. *See Fla. Bar v. Rosenberg*, 169 So. 3d 1155, 1162 (Fla. 2015) ("[S]ince the decision in [*Fla. Bar v.* ]*Bloom*[, 632 So. 2d 1016 (Fla. 1994)], the Court has moved toward imposing stronger sanctions for unethical and unprofessional conduct."); *Fla. Bar v. Rotstein*, 835 So. 2d 241, 246 (Fla. 2002) ("In recent years, this Court has moved towards stronger sanctions for attorney misconduct.").

In determining the sanction to recommend, the referee considered the Standards that support imposition of a suspension, including 4.42 ("Suspension is

appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."), 6.12 ("Suspension is appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action."), and 7.2 ("Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."). In addition, the referee found five aggravating factors, including Standards 9.22(a) (prior disciplinary history); 9.22(b) (dishonest or selfish motive); 9.22(c) (a pattern of misconduct); 9.22(d) (multiple offenses); and 9.22(i) (substantial experience in the practice of law), and one mitigating factor: 9.32(g) (character or reputation). Lastly, the referee considered cases where the Court imposed suspensions ranging in time between sixty days and three years. *See, e.g.*, *Fla. Bar v. Rosenberg*, 169 So. 3d 1155 (Fla. 2015); *Fla. Bar v. Adler*, 126 So. 3d 244, 247 (Fla. 2013); *Fla. Bar v. Shankman*, 41 So. 3d 166 (Fla. 2010); *Fla. Bar v. Head*, 27 So. 3d 1 (Fla. 2010); *Fla. Bar v. Ticktin*, 14 So. 3d 928 (Fla. 2009); *Fla. Bar v. Rotstein*, 835 So. 2d 241, 246 (Fla. 2002); *Fla. Bar v. Maier*, 784 So. 2d 411 (Fla. 2001); *Fla. Bar v. Norvell*, 685 So. 2d 1296 (Fla. 1996); *Fla. Bar v. Barley*, 541 So. 2d 606 (Fla. 1989).

Contrary to the case law cited by the referee, existing case law supports imposition of more severe discipline. For example, in *Florida Bar v. Herman*, 8 So. 3d 1100 (Fla. 2009), we imposed an eighteen-month suspension based upon the attorney's violation of Bar Rules 4-1.7(a) (prohibiting representation of a client if the representation will be directly adverse to the interests of another client, unless each client consents after consultation), 4-1.8(a) (prohibiting business transactions with a client or knowingly acquiring an ownership, possessory, security, or other pecuniary interest adverse to a client), 4-8.4(a) (prohibiting violations or attempts to violate the Rules of Professional Conduct), and 4-8.4(c) (prohibiting engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *Id.* at 1103-04. The referee in *Herman* found four aggravating factors and one mitigating factor. *Id.* at 1004. The Court imposed a three-year suspension in *Florida Bar v. Feige*, 937 So. 2d 605 (Fla. 2006), where the attorney had engaged in sixteen different rule violations involving serious deficiencies in his representation of numerous clients. *Id.* at 606-07. Similarly, in *Florida Bar v. Provost*, 323 So. 2d 578 (Fla. 1975), the Court imposed a three-year suspension upon a lawyer who failed to properly represent and protect the interests of his clients. *Id.* at 578-79. In *Florida Bar v. Shoureas*, 892 So. 2d 1002 (Fla. 2004), we rejected disbarment in favor of a three-year suspension for a lawyer who failed to act with reasonable diligence and

to communicate with clients but did not have dishonest or selfish motive and was inexperienced in the practice of law. *Id.* at 1008-09.

Here, in light of the extensive rule violations by Petersen, the number of existing aggravating factors, the lack of mitigation except for the finding of good character, and relevant case law, Petersen is suspended from the practice of law for three years.

## CONCLUSION

Accordingly, we approve the referee's report finding that Petersen violated the Bar Rules as set forth in the Bar's complaint. However, we disapprove the referee's report pertaining to the recommendation of a ninety-one day suspension. Rather, Petersen is hereby suspended for three years. The suspension will be effective thirty days from the filing of this opinion so that Byron Gregory Petersen can close out his practice and protect the interests of existing clients. If Petersen notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Petersen shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further, Petersen shall accept no new business from the date this opinion is filed until he is reinstated.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Byron Gregory Petersen, in the amount of $7,513.81, for which sum let execution issue.

It is so ordered.

CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Tallahassee, Florida, Navin A. Ramnath, Bar Counsel, and Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida,

for Complainant

Byron G. Petersen, pro se, Boca Raton, Florida,

for Respondent